**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**MONROE DIVISION**

| | | |
|---|---|---|
| **CLAUDE W. BURNS** | * | **CIVIL ACTION NO. 08-1626**<br>**Section P** |
| **VERSUS** | * | **MAG. JUDGE KAREN L. HAYES** |
| **CITY OF MONROE, ET AL.** | * | |

**MEMORANDUM RULING**[1]

Before the court are cross-motions for summary judgment filed by plaintiff Claude W. Burns [doc. # 43] and defendants, City of Monroe, City of Monroe Police Department, Casey M. Baker, and Donald Duncan [doc. # 41]. For reasons assigned below, plaintiff's motion for summary judgment [doc. # 43] is **DENIED** and defendants' motion for summary judgment [doc. # 41] is **GRANTED**.

**Procedural History**

On October 29, 2008, plaintiff Claude W. Burns, proceeding *pro se* and *in forma pauperis*, filed the instant civil rights complaint pursuant to 42 U.S.C. § 1983 against the City of Monroe and Monroe Police Officer Casey M. Baker. Burns is an inmate in the custody of the Louisiana Department of Corrections and is currently housed at the Caldwell Correctional Center in Grayson, Louisiana. He contends that on March 23, 2008, he was subjected to excessive force and denied access to prompt medical care when he was arrested by Officer Baker. On January 9,

---

[1] With the consent of all parties, the above-captioned case has been referred to the undersigned for the conduct of all further proceedings and the entry of judgment. 28 U.S.C. § 636(c).

2009, Burns amended his complaint to join as defendants Officer Donald Duncan and the Monroe Police Department. Plaintiff seeks damages of $300,000, as well as Baker's discharge from the Monroe Police Department.

On March 4, 2009, the undersigned determined that plaintiff sufficiently pleaded a cause of action alleging excessive force and denial of prompt medical care. (March 4, 2009, Memorandum Order [doc. # 7]). Accordingly, the court ordered service on defendants. *Id*. Defendants answered plaintiff's complaint, as amended, on May 13, 2009. [doc. # 14]. Following a discovery period, the undersigned set the matter for a July 7, 2010, bench trial. (Aug. 31, 2009, Order [doc. # 19]). All parties subsequently consented to trial before magistrate judge; thus, the district court referred the case to the undersigned for the conduct of all further proceedings and entry of judgment. (Sept. 25, 2009, Order [doc. # 24]).

On May 25, 2010, defendants obtained leave of court to file the instant out-of-time motion for summary judgment. (May 25, 2010, Orders [doc. #s 39 & 40]). On June 15, 2010, plaintiff filed his own motion for summary judgment, which the court also construed as his opposition to defendants' motion for summary judgment. Upon review of plaintiff's motion/opposition, however, the court noted that plaintiff failed to support his version of events with competent summary judgment evidence, e.g., in affidavit form, or a declaration sworn under penalty of perjury, 28 U.S.C. § 1746. (June 21, 2009, Order [doc. # 46]). Accordingly, the court afforded him until June 25, 2010, to supplement his motion/opposition with competent summary judgment evidence. *Id*. The court cautioned plaintiff that if he failed to remedy the evidentiary deficiencies in his submission, then the court would consider defendants' motion as factually unopposed. *Id*.

On June 24, 2010, defendants filed an opposition [doc. # 47] to plaintiff's motion for summary judgment. On June 25, 2010, plaintiff filed a document entitled "Plaintiff factual [sic] Motion of Claims." [doc. # 48]. However, the submission did not include plaintiff's version of events either sworn under oath or signed under penalty of perjury. The matter is now before the court.

**Summary Judgment**

Summary judgment is appropriate when the evidence before the Court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed R. Civ. P. 56(b). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2511 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharmaceuticals Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is

appropriate. *Id*. Indeed, in response to a properly supported motion for summary judgment, **the non-movant may not rest upon the mere allegations or denials contained in his pleadings**, but instead must set forth, by affidavit or otherwise, the specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). In other words, once the moving party points to an absence of evidence in the nonmoving party's case, the nonmovant must come forward with summary judgment evidence sufficient, such that if introduced at trial, it would suffice to prevent a directed verdict against the nonmovant. *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). There can be no genuine issue as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

## Analysis

### I. Excessive Force

To state a claim for excessive force under the Fourth Amendment, plaintiff must initially show that he was seized. *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) (citation

omitted). As it is not disputed that Burns was injured while being physically restrained and handcuffed, it is manifest that he was seized for purposes of the Fourth Amendment.

Next, plaintiff must demonstrate that he suffered "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Flores, supra* (citation omitted). The determination of "reasonableness" is "not capable of precise definition or mechanical application ... [but] requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Goodman v. Harris County*, 571 F.3d 388, 397 (5th Cir. 2009) (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865 (1989)). Whether the force was excessive is measured "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Peterson v. City of Fort Worth, Tex*., 588 F.3d 838, 846 (5th Cir. 2009) (quoted source omitted).

In this case, defendants have adduced evidence that at approximately 10:00 p.m. on March 23, 2008, Officer Casey Baker of the Monroe Police Department responded to a stolen vehicle report involving a gray Ford Escort. (Affidavit of Casey Baker, incorporating offense report; Def. MSJ, Exh. B & B-1). Shortly after the report, Baker observed a gray Ford Escort station wagon, driving without illuminated headlights, in the vicinity of the reported theft. *Id*. Accordingly, Officer Baker tailed the vehicle, and waited for additional police units to respond. *Id*. Suddenly, however, the Ford Escort began to accelerate rapidly. *Id*. Officer Baker initiated his blue lights and siren, but the Ford Escort continued at a high rate of speed, traveling on both sides of the street. *Id*. The vehicle negotiated several turns at high velocity, and ignored one or

more stop signs. *Id*. Eventually, the Ford Escort failed to successfully negotiate a turn, and came to rest half on and half off of the curb. *Id*.[2]

In his May 22, 2010, affidavit, Officer Baker averred that he and other officers approached the Ford Escort and repeatedly told the driver (later determined to be Claude Burns) to exit the vehicle. (Affidavit of Casey Baker, incorporating offense report; Def. MSJ, Exh. B & B-1). However, Burns remained seated, with his eyes closed. *Id*. Burns opened his eyes at least twice, but then quickly closed them again upon seeing Officer Baker. *Id*. Eventually, Baker had to pull Burns from the car and place him on the ground. *Id*. Burns struggled to thwart his removal from the car and continued to struggle once on the ground. *Id*. Baker repeatedly told Burns to place his hands behind his back, but Burns refused to comply. *Id*. In an effort to effect Burns' compliance, Baker administered two closed fist strikes to Burns' upper right arm. *Id*. Thereafter, Burns was successfully handcuffed. *Id*.

During the struggle on the pavement, Burns suffered an abrasion to his right cheek. *Id*. Later that night, the wound was cleaned and treated at E. A. Conway Hospital with Betadine and Neosporin. (Affidavit of Nancy Broadway, incorporating E. A. Conway records; Def. MSJ, Exh. F & F1-5). The hospital record characterized the abrasions as "superficial." *Id*. The record also indicates that Burns complained of a headache. *Id*. Nonetheless, he was quickly discharged and instructed to follow up with the prison infirmary, as needed. *Id*. The prison Health Intake Form completed on March 24, 2008, – the day after Burns's arrest, reveals "no obvious trauma related issues." *Id*. Ultimately, the abrasion left a small discoloration under Burns' right eye that he still retained over one year later. (Affidavit of David Cobb; Def. Opp. Memo., Exh. I).

---

[2] By the time the chase ended, three to four police units were involved. *Id*.

Officer Baker's account of the events of March 23, 2008, set forth in his affidavit, is consistent with the version that he penned in his offense report. *Compare* Affidavit of Casey Baker and associated offense report; Def. MSJ, Exh. B & B-1. Nevertheless, plaintiff contends that Baker's statements were inconsistent with Baker's testimony that he provided at a July 1, 2008, preliminary examination hearing held in Burns' criminal proceedings. *See* Hearing Transcript, in pert. part; Pl. MSJ, Exhs., pg. 7. Plaintiff notes that, at the hearing, Baker used the pronoun "we," instead of the first person pronoun, "I," which he used in his incident report. However, more than one officer was involved in Burns' stop and arrest; thus, the different pronoun use does not taint Baker's credibility.

Plaintiff also emphasizes that, at the hearing, Baker testified that Burns opened the car door himself, and thereafter the officers "helped him out of the car." As Baker explained in his affidavit, however, he simply misstated when he said that Burns opened the door. (Baker Affidavit). Moreover, Baker explained that when he said the officers "helped" Burns from the car, this was a euphemism for his forcible removal from the vehicle. *See* Baker Affidavit.

In another effort to undermine Baker's credibility, plaintiff touts the fact that the district attorney declined to prosecute a charge against him for resisting an officer. *See* Charge File; Pl. Amend. Compl., Exhs. [doc. # 5]. However, the arresting officers charged Burns with resisting an officer, and a judge found probable cause to detain him on that basis. (Affidavit of Prob. Cause; Pl. MSJ Exhs., pg. 1). Further, the assistant district attorney assigned to the case, Geary Aycock, averred that he opted not to pursue an aggravated flight charge against Burns in an effort save time, following Burns' agreement to plead guilty to a charge of unauthorized use of a motor vehicle. (Affidavit of Geary Aycock; Def. MSJ, Exh. D).

The court notes that Officer Baker's account is fully supported by the sworn affidavit of Officer Jeff Turner, another Monroe police officer who assisted Officer Baker with the apprehension and arrest of Burns. (Affidavit of Jeff Turner; Def. MSJ, Exh. C). Defendants also adduced uncontroverted evidence that a closed fist strike to the upper right arm of an arrestee who continues to refuse commands to place his hands behind his back is an accepted method of compliance, that entails a minimal amount of force. (Affidavit of Mark Nappier; Def. MSJ, Exh. G).[3]

In sum, the evidence is uncontroverted that plaintiff initiated a high speed flight that potentially endangered the lives of other innocent car drivers and the pursuing police officers. Moreover, once Burns came to a stop, he failed to comply with officers' demands to exit the vehicle and to place his hands behind his back. Accordingly, the officers employed an accepted minimum force technique to ensure compliance. Under these circumstances, the court is compelled to find that no reasonable trier of fact could find that the use of force by Officer Baker and other City of Monroe police officers was excessive or objectively unreasonable. *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 411 (5th Cir. 2008) (no reasonable trier of fact could find for the nonmoving party). Stated differently, the evidence presented is insufficient to permit a reasonable jury[4] to return a verdict in favor of

---

[3] Mark Nappier is a 17 year veteran of the Monroe Police Department and currently serves as training coordinator. *Id*. As such, he is aware of state and national "force continuum" principles which are used to properly effectuate an arrest. *Id*.

[4] In this case, which is to be tried as a bench trial, the trier of fact is the court.

plaintiff. *Id*. (citation omitted).[5]

## II. Lack of Prompt Medical Care

A pretrial detainee's constitutional right to medical care (as enforced against a state actor) arises from the due process guarantee of the Fourteenth Amendment. *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000). When a pretrial detainee initiates a claim for the denial of medical care which is directed toward a particular incident, it is properly analyzed as an episodic act case, and a deliberate indifference standard is applied. *Scott v. Moore,* 114 F.3d 51, 53 (5th Cir. 1997) (en banc) (quoting *Hare v. City of Corinth,* 74 F.3d 633, 644 (5th Cir.1996)); *Nerren v. Livingston Police Dept.,* 86 F. 3d 469 (5th Cir. 1996). This is the same standard applied to claims brought by convicted prisoners under the Eighth Amendment. "[T]here is no significant distinction between pretrial detainees and convicted inmates concerning basic human needs such as medical care." *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir.2001).

To establish liability, a detainee must "show that a state official acted with deliberate indifference to a substantial risk of serious medical harm and that injuries resulted." *Wagner v. Bay City, Tex*., 227 F.3d 316, 324 (5th Cir. 2000); *see also Estelle v. Gamble*, 429 U.S. 97, 104,

---

[5] While today's result might be different had plaintiff adduced evidence, in competent summary judgment format, that, in contrast to the officers' statements, he did not put up a struggle and instead, that he fully complied with the officers' instructions, plaintiff for whatever reason, has failed to do so, despite having been notified of this omission and having been afforded an opportunity to remedy it. *See* June 21, 2010, Order. The court emphasizes that "in the face of the defendant's properly supported motion for summary judgment, the plaintiff [can]not rest on his allegations . . . to get to [trial] without any significant probative evidence tending to support the complaint. " *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citations and internal quotation marks omitted). Furthermore, "a district court has no obligation to provide a pro se litigant with particularized instructions on the requirements and consequences of summary judgment." *Stingley v. Den-Mar, Inc.*, 347 Fed. Appx. 14, 20 (5th Cir. Sept. 1, 2009) (unpubl.) (citation omitted).

97 S.Ct. 285 (1976). More specifically, deliberate indifference in the context of an episodic failure to provide reasonable medical care to a pretrial detainee means that: (1) the official was aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the official actually drew that inference; and (3) the official's response indicates that the official subjectively intended that harm occur. *Thompson v. Upshur County, Tx.,* 245 F.3d 447, 458-59 (5th Cir. 2001).

"[T]he failure to alleviate a significant risk that [the official] should have perceived, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Moreover, "deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459. "Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997); *see also Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).

Plaintiff contends that he was denied prompt medical care because defendants initially transported him to Ouachita Parish Correctional Center ("OCC") for booking, instead of taking him directly to the hospital. However, defendants have adduced evidence from the transporting officer, Donald Duncan, that during the ride to OCC Burns did not complain about any arrest-related trauma. (Affidavit of Donald Duncan; MSJ, Exh. A). According to Duncan, Burns never complained about a headache until the OCC duty officer noted Burns' cheek abrasion. *Id*. Duncan thereafter transported Burns to E. A. Conway hospital where he waited approximately 30 minutes before staff evaluated and treated him. *Id*.

The OCC supervisor who was on duty the night of Burns' arrest was Reginald Manning. (Manning Affidavit; Def. MSJ, Exh. E). Manning averred that he recalled Burns' arrival at the OCC, and opined that normally his cheek wound would have been treated by a nurse at the facility. *Id*. However, because of the hour, no nurse was on duty, and therefore, he asked the transporting officer to take Burns to the hospital. *Id*.

In response to defendants' motion, plaintiff has not adduced any evidence that a defendant herein actually inferred a substantial risk of harm because of the failure to immediately transport him to the hospital, or that a defendant subjectively intended him to suffer resulting harm. Rather, the evidence uniformly confirms that defendants took plaintiff to the OCC, where typically, there is a nurse on duty to treat minor wounds of the type suffered by plaintiff. Moreover, plaintiff has not adduced any evidence that the brief detour before his eventual transport to the hospital either exposed him to, or caused him, serious medical harm, especially in light of the minimal medical treatment ultimately administered at the hospital. For a delay in medical care to be actionable, there must be deliberate indifference, which results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993); *Valera v. Thomas*, 205 Fed. Appx. 306, 2006 WL 3311069 (5th Cir. 2006) (jail's policy of confiscating prescription medication upon intake did not violate constitutional rights where there was no injury). Plaintiff has not made the requisite showing here.

## III. Qualified Immunity

Defendants also invoke the affirmative defense of qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known.'" *Club Retro LLC v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (quoted sources omitted). When a defendant invokes qualified immunity, the burden shifts to plaintiff to establish that the defense is inapplicable. *Id*. (citation omitted). Plaintiff's burden is two-pronged. *Id*. First, he must demonstrate that defendants violated a constitutional right under current law. *Id*. "Second, he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id*. (quoted source and internal quotation marks omitted). The courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (*citing Pearson v. Callahan*, 808 U.S. 2009, 129 S.Ct. 808 (2009)).

Having determined that the individual defendants did not violate plaintiff's constitutional rights, *see* discussion, *supra*, analysis of the qualified immunity defense is unnecessary. *Goodman*, 571 F.3d at 396.

**IV. Government Entity Liability**

To impose § 1983 liability against a government entity for the misconduct of one of its employees, plaintiff must demonstrate that the constitutional deprivation was caused by a policy or custom of the entity. *Kohler v. Englade*, 470 F.3d 1104, 1115 (5th Cir. 2006) (citing *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 690-691, 98 S.Ct. 2018, 2036 (1978)). "In a Section 1983 case, the burden of proving the existence of an unconstitutional municipal policy or established custom rests upon the plaintiff." *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989).

In the case *sub judice*, plaintiff has not established an underlying constitutional violation by any named employee of the City of Monroe or the City of Monroe Police Department. *A fortiori*, he has not identified a precipitating unconstitutional custom or policy enacted by these entities.[6]

**Conclusion**

For the reasons set forth above, the court finds that there are no genuine issues of material fact and that defendants, City of Monroe, City of Monroe Police Department, Casey M. Baker, and Donald Duncan are entitled to judgment as a matter of law dismissing plaintiff's claims against them, in their entirety. Fed.R.Civ.P. 56. Accordingly,

The cross-motion for summary [doc. # 43] filed by plaintiff Claude W. Burns is **DENIED**.

The motion for summary judgment [doc. # 41] filed by defendants, City of Monroe, City of Monroe Police Department, Casey M. Baker, and Donald Duncan is **GRANTED**; judgment shall be entered in favor of defendants, City of Monroe, City of Monroe Police Department, Casey M. Baker, and Donald Duncan, and against plaintiff, **DISMISSING, with prejudice**, plaintiff's claims in their entirety. Fed.R.Civ.P. 56

IT IS ORDERED.

THUS DONE AND SIGNED at Monroe, Louisiana, this 2nd day of July 2010.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE

---

[6] To the extent that the City of Monroe Police Department even constitutes a separate entity capable of being sued.